**Opinion issued October 15, 2020**



In The

# Court of Appeals

For The

## First District of Texas

———————————

**NO. 01-19-00602-CR**

**NO. 01-19-00603-CR**

———————————

**ANTHONY AUTRIE JOHNSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Case Nos. 17-DCR-079282 & 17-DCR-079283**

---

**MEMORANDUM OPINION**

Anthony Autrie Johnson appeals his convictions for indecency with a child by

sexual contact and sexual assault of a child. TEX. PENAL CODE §§ 21.11(a);

22.011(a). After a jury trial, he was sentenced to a total of 23 years' imprisonment.

He argues that the evidence was legally insufficient to support his convictions and that the trial court erred in holding the punishment hearing during his absence. We affirm.

## Background

In September 2017, Johnson was indicted for indecency with a child by sexual conduct and sexual assault of a child alleged to have occurred in January 2017 and March 2017, respectively. In July 2019, Johnson pleaded not guilty to both charges and a jury trial commenced.

Jane Taylor[1] testified that she was 15 at the time that Johnson committed the offenses. Johnson had lived with Jane, her mother, and her younger sister for several years before he began to abuse Jane. Even though Johnson was her mother's boyfriend, Jane viewed him as a father figure. Over time, Johnson became more hostile and aggressive towards Jane and her family members. Johnson would yell at her, "cuss" at her, and threaten to "whoop" her, and she became afraid of him.

Jane explained that in January 2017, when she was fifteen years old, Johnson found her sneaking back into the house after her curfew. Johnson grabbed her by the arm and told her to get in the garage, which he used as a "man cave." Jane was afraid. He threatened to alert her mother unless she let him "touch" her. Jane refused, but Johnson told her that if she did not allow it, he would "touch" her younger sister. He

---

[1]     The complainant used a pseudonym.

2

also threatened that if she told her mother, her mother would not believe her. Johnson grabbed Jane, put his hands in her underwear, and rubbed inside and outside of her vagina with his fingers.

Jane testified that between January and March 2017, Johnson touched her breasts. Specifically, she testified that one evening, while her mother was getting ready for bed, Jane walked past Johnson in the living room. As she walked by, he grabbed her breast with his hand. She was wearing a nightgown, and after the incident, she threw it away.

Jane testified that on various occasions between January and March 2017 she and Johnson would be in the car alone running errands. When she got out of the car, Johnson would "smack" her bottom. While in the car alone, Johnson told Jane that "little boys can't do what grown men can do" for her. He told her that she was "a beautiful young lady" and that men would "die to have [her] and be with [her]." He also told her that men would pay to be with her.

On one occasion, he took her to a retail pharmacy, purchased supplies, and instructed her to shave her vagina. At some point after he had purchased the shaving supplies, Johnson came in Jane's room and accused her of using her mother's credit card without permission. He demanded that she get undressed, threatening that if she did not comply, he would ask her sister to do so or tell her mother about using the credit card. Wanting to protect her sister, Jane took off her clothes. Johnson

demanded that she get on a bed on her hands and knees so that her vagina and bottom were exposed. He brought a chair into the room and sat so he could see her. He then told her to maintain the position on all fours for two minutes, and he set a timer. When the timer went off, she got her clothes and left the room.

Finally, Jane testified that in March 2017, Johnson woke her up in the middle of the night, took her to the garage, and told her to face a wall. He then put one hand on her back and the other on her hip, pulled down her pants, put his mouth in between her legs, and licked the outside and inside of her vagina. He stopped when he fell because Jane kicked her leg back. Jane used a tool to escape from the locked garage back into the house.

Jane testified that in April 2017 she told her mother about what Johnson had done to her. Jane and her mother were in the car alone after one of Jane's softball games. Jane's mother called the police. A few months later, Jane underwent a physical exam and a forensic interview.

Jane's younger sister testified that they are very close. She testified that she met Johnson once before they moved in with him, and she never felt close to him. She described Johnson as aggressive and mean. He disciplined the sisters often and frequently yelled at them. Jane's mother and Johnson frequently argued, and sometimes their arguments became physical. Jane's sister testified that on one occasion he talked to her about sex. They were alone in the garage, and he offered

4

to buy her condoms and a sex toy. He warned Jane's sister that she could not say that the items came from him. She was very uncomfortable and did not tell her mother because she wanted to forget about it. She was reminded of the conversation after the police came to her house and Jane told her what Johnson had done to her.

Fiona Remko, a licensed clinical social worker, testified after reviewing video of Jane's forensic interview. Remko explained the process of forensic interviewing of child sexual assault victims to the jury. According to Remko, when the interview started, Jane seemed strong and very forthcoming, but as the detail gathering progressed, she became very emotional and struggled to talk about the impact the abuse had on her as a person.

Detective M. Alexander of the Fort Bend County Sheriff's Office testified that he was present for forensic interviews of Jane and her sister. Shortly after, Johnson contacted him to make a statement. Johnson told the detective that he did not sexually abuse Jane and that he was at work during the times she alleged the incidents occurred. Johnson said that he was working overnight shifts in January 2017. Detective Alexander asked Johnson for work records but never received them so Detective Alexander sought a grand jury subpoena for the records from Johnson's employer. The records showed that Johnson was not working overnight shifts in January 2017. He worked a few overnight shifts in February.

Detective Alexander also testified that he looked for DNA evidence and bodily fluids in the garage and bedrooms of Johnson's house, but he did not find any. Jane underwent an exam to collect physical evidence, but it was performed in May 2017, rather than the recommended window of within 96 hours after sexual abuse, so it was unsurprising that no physical evidence was recovered.

A human resource professional at HydroChem PSC testified that she gave employment records for Johnson, an employee of HydroChem, to a detective pursuant to a subpoena. The records were introduced into evidence. She testified that Johnson began working at HydroChem as a trainee in January 2017. Trainees worked from 6:00 a.m. to 6:00 p.m. She testified that if Johnson stated that he worked overnights in January 2017, that would be contradicted by the employment records.

The defense called several witnesses, including Rosemary Bush. Rosemary's husband is Jane's maternal grandfather. Jane, her mother, and her sister had lived with the couple for several years of elementary school. They moved out when Jane's mother moved in with Johnson, but Rosemary continued to see the girls frequently. She testified that Jane and her sister complained about discipline from Johnson. After she heard that Jane had been abused by Johnson, she offered to talk to Jane about it, and Jane did not want to do so.

Nelson Bush, Jane's grandfather, testified that Jane's mother and Johnson had relationship problems. Johnson complained to Nelson about his daughter on numerous occasions, and each time Nelson instructed Johnson to leave his daughter. In the months before Jane told her mother about the abuse, Johnson had become very aggressive. Johnson came to Nelson's home unannounced or would call Nelson and degrade his daughter. Nelson believed Johnson was very controlling, emotional, and high strung.

The defense called Jane to testify briefly. Defense counsel questioned her about using her mother's credit card to order clothes and food delivery. She stated that her mother found out about the clothing charge later in the week after Johnson made her stay naked on a bed. Jane testified that on the day that she told her mother about Johnson's abuse, her mother was not upset with her. She also testified that during her medical exam, she stated that she had consensual sexual contact in November 2016 with someone her age.

Johnson's mother, Theresa Jernigan, testified that she had a good relationship with Jane and her sister, but she had not spoken to them since Jane's allegations. She regarded them as happy grandchildren.

Shay Ward testified that Johnson was a father figure in her life. Ward's mother dated Johnson, and Ward had lived with them for a few years. She never experienced inappropriate behavior from Johnson. She testified that the police had been called to

7

separate Johnson and her mother on several occasions, but she had not seen Johnson be physically aggressive to her mother.

Johnson testified that he met Jane's mother because she worked for a doctor that he visited in Houston. He moved in with Jane's mother and her two daughters in 2010. He testified that he had problems with Jane and her sister because they did not do chores and Jane's mother did not discipline them. In January 2017, he started to suspect that someone was coming in and out of the house in the middle of the night because in the mornings he saw footprints in the grass between Jane's window and the sidewalk. First, he asked Jane's mother if she was sneaking out of the house at night. When she said no, he started putting tape on the doors and windows so that if someone opened them, he could see that the tape seal was broken. He determined that Jane's window and the garage door were being opened in the middle of the night. They had a family meeting about it, but neither child admitted to sneaking in or out. A few days later, he found a clothing package that Jane had ordered, and he was happy because he thought Jane's mother would finally have to punish her. Jane's mother and Johnson confronted Jane about ordering clothing without permission. He later found Jane crying because her mother had "ground hogged" her. He told Jane that he was leaving to go to a party, but if he came back and she had not been "whooped" with a belt, he would do so. He wanted to punish her for using the credit

card without permission and sneaking in and out of the house. He testified that when he returned to the house, police confronted him about the sexual abuse allegations.

Johnson denied all of Jane's allegations against him. He stated that he never took her into the garage or put his hands inside her clothing. Johnson believed that Jane told her mother he had sexually abused her because she was upset about his discipline for other things, such as when he would take her cell phone for a few days for not doing chores.

The jury found Johnson guilty of indecency with a child by sexual contact and sexual assault of a child. After the announcement of the verdict, the trial court decided that the punishment proceeding would begin the next morning. The State asked the court to remand Johnson to custody overnight, but the court denied the request. Since probation was an option at sentencing, Johnson would remain on bond. Johnson was informed that the punishment proceedings would begin in the same courtroom at 9:00 a.m. the next day.

The next morning at 10:30 a.m. when the punishment hearing was ready to start, Johnson's counsel informed the court that he had received a text message that police had responded to Johnson's mother's house and found Johnson barricaded in a bathroom. Counsel heard that Johnson had taken Tylenol and had a knife but had not cut himself. Johnson was taken by ambulance to the hospital. Johnson's counsel believed that he was still at the hospital being treated. He stated that Johnson's

9

mother was present in the courtroom and had given him a piece of paper given to her by police that had an incident number.

The court stated that the sentencing hearing would proceed with no testimony or information about Johnson's absence given to the jury. The jury heard punishment witnesses and began deliberating. Johnson remained absent for the punishment hearing. During the jury's punishment deliberations, the trial court was informed that Johnson had been taken into custody. The jury recommended 15 years' imprisonment for sexual assault and 8 years' imprisonment for indecency to a child by sexual contact.

Johnson was present when the court formally sentenced him. The court granted the State's motion for consecutive sentences and ordered that Johnson serve 15 years and 8 years, consecutively. Johnson appeals.

## Sufficiency of the Evidence

In his first issue, Johnson contends that the evidence was legally insufficient to support his convictions. He argues that the State failed to adduce testimony proving the dates of the incidents or his intent to commit each offense. We disagree.

### A.    Standard of Review

In an appeal of a criminal conviction, we review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318–20 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

10

Under the *Jackson* standard, evidence is insufficient when, considered in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the jury's credibility and weight determinations because the jury is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. Jurors may choose to believe or disbelieve any part of a witness's testimony. *Gonzalez v. State*, 522 S.W.3d 48, 56 (Tex. App.—Houston [1st Dist.] 2017, no pet.). We resolve inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see Clayton*, 235 S.W.3d at 778 ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*,

235 S.W.3d at 778. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

If an appellate court finds the evidence insufficient, it must reverse the judgment and enter an order of acquittal. *Estrella v. State*, 546 S.W.3d 789, 797 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

The uncorroborated testimony of either the child or an outcry witness is sufficient to support a conviction for indecency to a child or sexual assault of a child. *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing TEX. CODE CRIM. PROC. art. 38.07). The State has no burden to produce any corroborating or physical evidence. *Martines v. State*, 371 S.W.3d 232, 240 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Courts give wide latitude to testimony provided by child victims of sexual abuse. *Jones*, 428 S.W.3d at 169.

## B.    Indecency with a Child

Johnson argues that the evidence was insufficient to prove that he engaged in the offense of indecency with a child on the date alleged in the indictment and that the evidence is insufficient to prove his intent. We disagree.

A person commits the offense of indecency with a child if he "engages in sexual contact with the child or causes the child to engage in sexual contact; or with

12

intent to arouse or gratify the sexual desire of any person: causes the child to expose

. . . any part of the child's genitals." TEX. PENAL CODE § 21.11(a)(1), (a)(2)(B).

"Sexual contact" means "any touching by a person, including touching through

clothing, of the anus, breast, or any part of the genitals of a child." *Id.* § 21.11(c)(1).

The indictment charged that on or about January 15, 2017, Johnson committed

indecency with a child. It was presented on September 6, 2017. Pursuant to Texas

law, the jury was instructed that, while the indictment alleged that the offense was

committed on or about January 15, 2017, the jury was not bound to find that an

offense took place on those dates, as long as the offense occurred prior to the

presentment of the indictment and was not barred by the statute of limitations. *See*

*Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997). The jury was also

instructed that there is no statute of limitations for the offense of indecency with a

child. TEX. CODE CRIM. PROC. art. 12.01(1)(E). Jane testified that in January 2017,

when she was fifteen years old, Johnson touched her vagina with his fingers. We

reject Johnson's argument that the evidence was legally insufficient due to any

variance in the indictment date and the testimony.

The evidence was also sufficient to establish Johnson's intent. The required

intent for indecency to a child may be inferred from the surrounding circumstances.

*Gonzalez v. State*, 522 S.W.3d 48, 57 (Tex. App.—Houston [1st Dist.] 2017, no

pet.); *see also Robertson v. State*, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993)

13

(intent to arouse or gratify the sexual desire of a person can be inferred from conduct, remarks, or surrounding circumstances).

Jane testified that in January 2017, she snuck back into the house at night through a garage door. Johnson found her and promised not to tell her mother that she was breaking her curfew if Jane allowed him to "touch" her." He also threatened to "touch" her sister instead if she refused. Johnson grabbed Jane, maneuvered his hand inside her underwear, and touched inside and outside of her vagina with his fingers. Johnson told Jane that her mother would not believe her if she told her mother what had happened. Jane testified that she did not tell anyone, and Johnson continued to "touch" her through March 2017, including grabbing her breast on one occasion as she walked through the living room and grabbing or slapping her bottom on multiple occasions as she got out of the car.

Viewing the evidence in the light most favorable to the verdict, we conclude that the curfew incident alone, where Johnson touched Jane's vagina with his hand, is sufficient evidence for the jury to find Johnson guilty of engaging in indecency with a child by sexual contact. The jury could infer from Jane's testimony and the surrounding circumstances that Johnson did so with the intent to arouse or gratify himself. *See Jones*, 428 S.W.3d at 169 (the uncorroborated testimony of the child suffices to support a conviction for indecency with a child); *Moore v. State*, 397 S.W.3d 751, 754 (Tex. App.—San Antonio 2013, no pet.) (the specific intent

required for the offense of indecency with a child may be inferred from the defendant's conduct). To the extent that Johnson argues that his testimony conflicted with Jane's testimony, the jury was the sole judge of credibility of the witnesses and the weight to be given to the testimony. *See Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008).

We overrule Johnson's challenge to the sufficiency of the evidence to support his conviction for indecency with a child.

## C. Sexual Assault of a Child

Johnson likewise argues that there was insufficient evidence to establish the date he committed sexual assault of a child and that there was insufficient evidence to prove his intent to commit the offense.[2]

A person commits the offense of sexual assault of a child if, among other ways, he intentionally or knowingly "causes the sexual organ of a child to contact or penetrate the mouth . . . of another person, including the actor." TEX. PENAL CODE § 22.011(a)(2)(C); *see Jacobs v. State*, 355 S.W.3d 99, 101 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd) (citing TEX. PENAL CODE § 22.011(a)(2)). The statute

---

[2] Johnson challenges that "[t]he evidence presented by the State is simply inconsistent and nonexistent to allow an alleged victim to be lead [sic] into testimony that something happened in the garage and in some room on a bed, without any specifics as to dates, no months and no adequate descriptions."

15

defines "child" as "a person younger than 17 years of age." TEX. PENAL CODE § 22.011(c)(1).

The indictment alleged that Johnson committed the offense "on or about" March 28, 2017. As they were for the indecency offense, the jury was instructed that the State needed to prove that the sexual assault occurred prior to presentment of the indictment on September 6, 2017 and the expiration of any statute of limitations. The jury was also instructed that sexual assault of a child has no limitations period. *See* TEX. CODE CRIM. PROC. art. 12.01(1)(B). Jane testified that in March 2017, Johnson licked her vagina with his tongue. We reject Johnson's argument that the evidence is legally insufficient to support a conviction as to the date of the sexual assault offense.

Johnson also alleges that the State failed to present sufficient evidence that he had the intent to commit sexual assault of a child. The State was required to prove that Johnson intentionally or knowingly caused Jane's vagina to contact or penetrate the mouth of another person, including himself. TEX. PENAL CODE § 22.011(a)(2)(C). Jane testified that in March 2017, Johnson woke her up in the middle of the night and told her to go to the garage. Inside the garage, he forced her to face a wall while he pulled down her pants. Johnson squatted down on his knees, placed his mouth on Jane's vagina, and licked inside and outside of it with his

16

tongue. Jane started to cry and kicked her leg back, causing Johnson to fall and hit a shelf. Jane escaped by grabbing a tool to unlock and open the garage door.

Viewing the evidence in the light most favorable to the jury's verdict, the State presented sufficient evidence to support Johnson's conviction. *See Brooks*, 323 S.W.3d at 895. Jane's testimony that Johnson took her to the garage and licked her vagina with his tongue was sufficient evidence to support that he intentionally or knowingly touched her vagina with his mouth. To the extent that Johnson argues that his testimony conflicted with Jane's testimony, the jury was the sole judge of credibility of the witnesses and the weight to be given to the testimony. *See Bartlett*, 270 S.W.3d at 150. We resolve any inconsistencies in the evidence in favor of the verdict. *Clayton*, 235 S.W.3d at 778.

We overrule Johnson's challenge to the sufficiency of the evidence to support his conviction for sexual assault of a child.

### Appellant's Absence

In his second issue, Johnson contends that the trial court abused its discretion in holding the punishment hearing when he was not present in the courtroom. We disagree.

### A. Applicable Law

The Confrontation Clause of the Sixth Amendment of the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to

be confronted with the witnesses against him. . . ." U.S. CONST. amend. VI. The Confrontation Clause protects a defendant's right to physically face those witnesses who testify against him as well as his right to conduct cross-examination. *Scott v. State*, 555 S.W.3d 116, 125 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). The Court of Criminal Appeals has held that "within the scope of the right of confrontation is the absolute requirement that a criminal defendant who is threatened with loss of liberty be physically present at all phases of proceedings against him, absent a waiver of that right through defendant's own conduct." *Miller v. State*, 692 S.W.2d 88, 90 (Tex. Crim. App. 1985) (internal citations removed) (quoting *Baltierra v. State*, 586 S.W.2d 553, 556 (Tex. Crim. App. 1979)). This right is addressed in the Code of Criminal Procedure article 33.03, which provides:

> In all prosecutions for felonies, the defendant must be personally present at the trial . . . provided, however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion.

TEX. CODE CRIM. PROC. art. 33.03.

When there is evidence before the trial court to support a conclusion that the defendant's absence from the trial is voluntary after a jury has been selected, the trial court may permissibly continue the trial in the defendant's absence. *See Moore v. State*, 670 S.W.2d 259, 261 (Tex. Crim. App. 1984) (holding that trial court reasonably could have inferred that defendant's absence was voluntary when

18

defendant who had been released on bond, was present in court afternoon before, had been advised by court and counsel when and where to appear, and neither court nor counsel received communication from defendant explaining his absence). Thus, a defendant may waive his Sixth Amendment right to be physically present at trial to confront the witnesses against him if, after the jury has been selected with him in attendance, he voluntarily absents himself from the proceedings. *See Miller*, 692 S.W.2d at 90; *see also Taylor v. United States*, 414 U.S. 17, 18–20 (1973) (per curiam) (holding that defendant waives Sixth Amendment right to be present if, after trial has begun in his presence, he voluntarily absents himself from proceedings).

A trial court's determination that a defendant's absence was voluntary is reviewed for an abuse of discretion. *Miller*, 692 S.W.2d 88, 91 n.4; *Moore*, 670 S.W.2d at 261. "The voluntariness of a defendant's absence is generally judged in hindsight on appeal and an appellate court will not disturb the trial court's findings that a defendant voluntarily absented himself form the trial court proceedings when the defendant fails to put on any evidence to refute that determination." *Simon v. State*, 554 S.W.3d 257, 265 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Kline v. State*, 737 S.W.2d 895, 900 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd).

Generally, to preserve a complaint for appellate review, the party must make his complaint to the trial court by timely request, objection, or motion that states the

grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint. *See* TEX. R. APP. P. 33.1(a). Confrontation Clause claims are subject to this general preservation requirement. *See Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010). A defendant's failure to object on Confrontation Clause grounds at trial waives a Confrontation Clause complaint for appellate review. *See Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (holding that defendant failed to preserve Confrontation Clause complaint for appellate review when trial objection was solely on hearsay grounds); *Scott*, 555 S.W.3d at 126.

## B. Analysis

It is undisputed that Johnson was present during voir dire, the presentation of evidence in the guilt/innocence phase, and the recitation of the jury's verdicts after deliberation. After the announcement of the verdicts, the trial court decided that the punishment proceeding would begin the next morning. The State asked the court to remand Johnson to custody pending the punishment hearing the next day. The trial court denied the request, stating that, since probation was an option at sentencing, Johnson would remain on bond. Johnson was informed that the punishment proceedings would begin in the same courtroom at 9:00 a.m. the next day.

The next day at 10:30 a.m., when the punishment hearing was ready to start, Johnson's counsel informed the court that he had received a text message that police had responded to Johnson's mother's house and found him barricaded in a

20

bathroom.[3] Counsel heard that Johnson had taken Tylenol and had a knife but had not cut himself. He was taken by ambulance to a hospital. Johnson's counsel believed that he was still at the hospital being treated and stated that Johnson's mother was present in the courtroom with a paper given to her by police that had an incident number.

The court stated that the sentencing hearing would proceed with no testimony or information about Johnson's absence given to the jury.[4] While the trial court did not explicitly find that Johnson voluntarily absented himself, the trial court's decision to proceed with the punishment stage reflected an implicit finding that Johnson's absence was voluntary. Defense counsel did not object on any grounds, including the Confrontation Clause or Article 33.03 of the Code of Criminal Procedure, nor did he argue that Johnson's absence was involuntary or ask for a continuance. We hold that Johnson has failed to preserve this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a); *see also Scott*, 555 S.W.3d at 126 (holding failure to object did not preserve Confrontation Clause complaint for review); *Aguirre v. State*, 695 S.W.2d 793, 794 (Tex. App.—San Antonio 1985, no pet.) (holding failure to object on Article 33.03 grounds waived appellate review).

---

[3]     Counsel did not say who sent him the text message.

[4]     Johnson remained absent for the punishment hearing. During the jury's punishment deliberations, the trial court was informed that Johnson had been taken into custody, and he was in attendance for the court's sentencing pronouncement.

Even assuming Johnson had preserved the error for our review, the trial court did not abuse its discretion in proceeding with the punishment hearing based on an implicit finding that Johnson voluntarily absented himself. Johnson argues that after his counsel informed the court of his whereabouts, the trial court should have conducted an evidentiary hearing to inquire into whether his absence was voluntary or involuntary. But the trial court has no obligation to conduct a hearing to determine the reason for the defendant's absence. *See Gittens v. State*, 560 S.W.3d 725, 737–38 (Tex. App.—San Antonio 2018, pet. ref'd) (holding trial court need not conduct full evidentiary hearing on issue of voluntariness). Johnson does not contest that he was present at both points of trial required by Article 33.03. *See* TEX. CODE CRIM. PROC. art. 33.03 (court may continue trial to conclusion if defendant was present for jury selection and entering a plea to the indictment).

Furthermore, when there is evidence before the trial court to support a conclusion that the defendant's absence from the trial after a jury has been selected is voluntary, the trial court may continue the trial in the defendant's absence. *See Moore*, 670 S.W.2d at 261; *Gittens*, 560 S.W.3d at 737. The trial court heard from defense counsel that Johnson had been taken to the hospital after locking himself in his mother's bathroom. He reportedly ingested Tylenol and had a knife. Texas courts have held that a defendant voluntarily absented himself under similar circumstances. *See Smith v. State*, 494 S.W.3d 243, 253–54 (Tex. App.—Texarkana 2015, no pet.)

(no abuse of discretion in finding defendant voluntarily absented himself after attempted suicide by breaking his own knee and being taken to hospital for medical treatment); *Bottom v. State*, 860 S.W.2d 266, 267 (Tex. App.—Fort Worth 1993, no pet.) (no abuse of discretion in finding defendant voluntarily absented himself after attempted suicide by ingesting Tylenol and being placed in hospital). Even if his complaint had been preserved for appeal, the trial court would not have abused its discretion in proceeding with the punishment hearing despite Johnson's absence. *See* TEX. CODE CRIM. PROC. art. 33.03; *Moore*, 670 S.W.2d at 261; *Gittens*, 560 S.W.3d at 738.

We overrule Johnson's second issue.

## Conclusion

We affirm the judgment of the trial court.


Peter Kelly
Justice

Panel consists of Justices Keyes, Kelly, and Landau.

Do not publish. TEX. R. APP. P. 47.2(b).