

# NUMBER 13-21-00383-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JASON CUELLAR,                                                **Appellant,**

**v.**

THE STATE OF TEXAS,                                            **Appellee.**

## On appeal from the 24th District Court
## of Jackson County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Silva**
**Memorandum Opinion by Justice Longoria**

Appellant Jason Cuellar pleaded guilty in front of a jury to the offense of unlawful possession of a firearm by a felon, a third-degree felony. *See* TEX. PENAL CODE ANN. § 46.04(a)(1). Having found that Cuellar had committed and been finally convicted of one or more non-state jail felonies, the jury assessed Cuellar's punishment at eighteen years' confinement in the Correctional Institutions Division of the Texas Department of Criminal

Justice. *See id.* § 12.42(a). By four issues, Cuellar argues the trial court abused its discretion when it (1) directed the jury to find him guilty in its punishment charge, (2) determined that he voluntarily absented himself from his trial proceedings, (3) denied his request for continuance and his right to select the counsel of his choice, and (4) denied his motion for mistrial. We affirm.

## I.    BACKGROUND

On June 18, 2020, Cuellar was indicted for unlawful possession of a firearm by a felon and deadly conduct, third-degree felonies. *See id.* §§ 46.04(a)(1), 22.05(b)(1). Both charges arose out of an incident that occurred on or about May 6, 2020. The indictment also contained two enhancement paragraphs alleging that Cuellar had previously been finally convicted of two felonies: aggravated robbery and burglary of a habitation. *See id.* §§ 29.03, 30.01.

During voir dire on November 1, 2021, the State informed the trial court that it was abandoning the deadly conduct charge. After voir dire, in the presence of the jury, Cuellar pleaded guilty to unlawful possession of a firearm by a felon. The next day, the punishment phase commenced in the presence of the jury.

The evidence showed that Cuellar was released from incarceration on September 8, 2019, following his conviction for the felony offense of aggravated sexual assault of a child in 2005. The evidence also showed that Cuellar was involved in a verbal altercation with a neighbor on May 6, 2020, while living in Lolita, Texas, at the home of his mother and her husband, Sylvia and Thomas Ramirez. The verbal altercation took place on the street outside the Ramirezes' home prior to 1 a.m. During the altercation, Cuellar went

2

back inside the Ramirezes' home, obtained Thomas's shotgun from Thomas's bedroom closet without Thomas's consent, went back outside to confront the neighbor, and fired the shotgun.

According to Deputy Jorge Franco of the Jackson County Sheriff's Office, Sylvia called 911 at 12:57 a.m. and indicated that Cuellar had a gun or shot a gun. Officers arrived at the Ramirezes' home shortly after 1 a.m. Deputy Franco was given consent to enter the Ramirezes' home, where he obtained Thomas's shotgun which had fired and un-fired shotgun shells inside the chamber. Deputy Franco noted that the barrel of the shotgun was warm to the touch and smelled of fresh gun powder, indicating it had recently been fired. In addition, a spent casing of a shotgun shell was found on the street just outside of the Ramirezes' home that matched the make, model, and color of the shells found inside the shotgun. Deputy Franco noted that the spent casing appeared as if it had just came out of the gun and "smelled freshly fired." Deputy Franco also recorded footage from Thomas's video surveillance system that depicted Cuellar, shotgun in-hand outside the Ramirezes' home, minutes prior to the time of the 911 call. Cuellar was found inside his bedroom and was placed under arrest.

The State also presented evidence and testimony of Cuellar's prior convictions and extraneous offenses following his release from incarceration on September 8, 2019. On November 4, 2021, after both parties rested, the trial court delivered its instructions to the jury regarding punishment. Among other things, the trial court instructed the jury to find Cuellar guilty and to assess Cuellar's punishment. Cuellar raised no objections to the trial court's charge. After deliberations, the jury found Cuellar guilty of unlawful possession of

3

a firearm by a felon, found true the deadly weapon allegation and that Cuellar had been convicted of one or more non-state jail felonies as alleged by the State, and assessed Cuellar's punishment at eighteen years' confinement in the Correctional Institutions Division of the Texas Department of Criminal Justice and a $10,000 fine. This appeal followed.

## II. PUNISHMENT CHARGE

In his first issue, Cuellar claims the trial court abused its discretion when it directed the jury to find him guilty in its punishment charge to the jury.

### A. Standard of Review & Applicable Law

We review a complaint of jury charge error under a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). First, we determine whether error occurred. *Id*. Second, if we find error, we evaluate whether harm resulted from the error sufficient to require reversal. *Id.* If the defendant has not properly objected to alleged jury-charge error, as here, we reverse only if we find "egregious harm" to his rights. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (en banc) (first citing *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004); and then citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)).

### B. Discussion

Cuellar argues that "[a] trial court cannot direct a jury to find a Defendant guilty, even upon a plea of guilty, and the trial court's decision to do so here deprived [Cuellar] of his Sixth Amendment rights." We disagree.

A plea of guilty in front of a jury substitutes for a verdict of guilt, and the case proceeds to a unitary punishment hearing. *Fuller v. State*, 253 S.W.3d 220, 227 (Tex. Crim. App. 2008) (citing *Kercheval v. United States*, 274 U.S. 220, 223 (1927)); *Caroll v. State*, 975 S.W.2d 630, 631–32 (Tex. Crim. App. 1998). "[A] plea of guilty to a jury eliminates guilt as an issue to be determined and makes it 'proper for the trial judge in his charge to instruct the jury to return a verdict of guilty, charge the jury on the law as to the punishment issues and then instruct them to decide only those issues.'" *In re State ex rel. Tharp*, 393 S.W.3d 751, 757 (Tex. Crim. App. 2012) (quoting *Holland v. State*, 761 S.W.2d 307, 313 (Tex. Crim. App. 1988)). Further, "a combination instructed verdict and charge on punishment" is not error. *Holland*, 761 S.W.2d at 313.

In this case, Cuellar pleaded guilty to the jury. The trial court's punishment charge informed the jury that Cuellar had pleaded guilty to unlawful possession of firearm by a felon as alleged in the indictment, instructed the jury to find him guilty, and stated that "it now becomes your duty to assess . . . punish[ment]." In addition, the verdict forms from which the jury could choose all required in the first sentence that the jury have found the defendant guilty. The trial court therefore correctly instructed the jury regarding Cuellar's guilt, and the available verdict forms required them to make a finding of guilt. We conclude that the trial court did not err in its jury charge. *See Holland*, 761 S.W.2d at 313; *see also Ngo*, 175 S.W.3d at 743. We overrule Cuellar's first issue.

### III. VOLUNTARY ABSENCE

In his second issue, Cuellar claims the trial court abused its discretion when it found that Cuellar voluntarily absented himself from his trial proceedings.

5

On the morning of November 3, 2021, Cuellar's counsel announced to the trial court in a bench conference outside the presence of the jury that Cuellar "no longer wishes to participate. He wants to go back to his cell." After admonishing Cuellar that it was in his best interest to remain present in the courtroom throughout the trial to assist his counsel,[1] the trial court denied Cuellar's request to vacate the courtroom. Later that day, after the lunch recess and outside the presence of the jury, the trial court announced that Cuellar had informed jail staff that he would not appear in court for the remainder of the trial. Deputy Greene, the trial court's bailiff, testified "[Cuellar] advised me that he was not going to come back up to the courtroom. Once he got down and changed and got in his cell, he was not coming back up." The trial court instructed Deputy Greene as follows: "[G]o downstairs to the jail and advise [Cuellar] that I have ordered him to return to the courtroom and advise if he will cooperate without the use of physical force and violence against him." After a pause in proceedings, the trial court inquired about Cuellar's response to Deputy Greene. The following colloquy occurred:

| [The Court]: | . . . Deputy Greene, you remain under oath. And I instructed you to go to the jail and direct [Cuellar] to return to the courtroom. And what was his response? |
|---|---|
| [Deputy Greene]: | His response was that he[ i]s already pleaded guilty to the charge. He does not want to be up here. His past keeps being brought up and it[ i]s starting to piss him off more and that he said eventually he[ i]s going to go on off. And he says that if you forcefully make him come up here, bring everything you have. |
| [The Court]: | Very well. Then in light of his announcement, my ruling is[ ]that we will proceed in absentia with |

---

[1] The trial court also informed Cuellar that it had no ability to provide him with remote access to the proceedings.

6

|  |  |
|---|---|
|  | regard to [Cuellar]. And, [Cuellar's counsel], do you have any objection for the record? |
| [Cuellar's counsel]: | I would say I object to [Cuellar] not being present at his trial. It puts me at a disadvantage even though we are in the winding down trial [sic]. I think we[ a]re getting somewhere to that point. However, I do object against force being used against[ Cuellar] and him being injured, then brought into the courtroom. Because if he—based on what the deputy said, I have concerns about him being present in the courtroom if he[ i]s going to further damage his case by acting up in front of the jury. So I do[ no]t have any objections since he voluntarily is refusing to come to the courtroom. |
| [The Court]: | Very well. . . then we will proceed . . . in the absence of [Cuellar]. |

The next morning, November 4, 2021, the trial court ordered that Cuellar appear and be present in the courtroom for closing arguments. The trial court then directed Investigator Kent Bubela, who assisted as the trial court's bailiff that day, to convey to Cuellar the trial court's order and to determine "if [Cuellar] will respond and appear in court short of exercising violence upon him, force and violence upon him to get him up here." After a pause in proceedings, Investigator Bubela testified that he advised Cuellar of the court's order, and stated that "[Cuellar] said he doesn't want to come up here this morning." The following colloquy occurred:

|  |  |
|---|---|
| [The Court]: | And so . . . is it your impression that it would require the exercise of force? |
| [Investigator Bubela]: | Yes, sir. |
| [The Court]: | To compel his attendance here today? |
| [Investigator Bubela]: | Yes, sir. |

7

| | |
|---|---|
| [The Court]: | Very well. Thank you, Deputy[] Investigator. |
| [Investigator Bubela]: | I did advise him if he changed his mind to contact the jail and they would contact us. |
| [The Court]: | All right. Thank you, Investigator Bubela. I appreciate it. [Cuellar's counsel], any further motions or requests on behalf of [Cuellar] with regard to [Cuellar]'s refusal to appear this morning? |
| [Cuellar's counsel]: | No, Judge. It sounds like he[ i]s voluntarily failing to attend the trial. |

## A.    Standard of Review & Applicable Law

A criminal defendant has a constitutional and statutory right to be present at all stages of a trial for a felony offense. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 33.03; *Routier v. State*, 112 S.W.3d 554, 575–77 (Tex. Crim. App. 2003). A defendant may waive this right if he voluntarily absents himself from the proceedings. *See* TEX. CODE CRIM. PROC. ANN. art. 33.03; *see also Lira v. State*, ___S.W.3d___, No. PD-0213-21, 2023 WL 151372, *9 (Tex. Crim. App. Jan. 11, 2023) (citing *Miller v. State*, 692 S.W.2d 88, 91 (Tex. Crim. App. 1985)); *Ashley v. State*, 404 S.W.3d 672, 680 (Tex. App.—El Paso 2013, no pet.) ("After commencement of trial proceedings, a defendant may voluntarily absent himself from the trial without a violation of his Sixth Amendment right to be present during all phases of the trial.") (first citing *Taylor v. United States*, 414 U.S. 17, 18–19 (1973) (per curiam); and then citing *Miller*, 692 S.W.2d at 90). A defendant has "no right to interrupt the trial by his voluntary absence." *Taylor*, 414 U.S. at 20. "The busy trial courts of our state cannot stop the wheels of an already burdened criminal justice system because a defendant chooses to be absent from his own trial." *Smith v. State*, 494 S.W.3d 243, 254 (Tex. App.—Texarkana

8

2015, no pet.) (quoting *Sanchez v. State*, 842 S.W.2d 732, 733 (Tex. App.—San Antonio 1992, pet. ref'd)). "When there is evidence before the trial court to support a conclusion that the defendant's absence from the trial after a jury has been selected is voluntary, the trial court may permissibly continue the trial in the defendant's absence." *Gittens v. State*, 560 S.W.3d 725, 737 (Tex. App.—San Antonio, 2018 pet. ref'd).

A trial court's determination that a defendant is voluntarily absent from a trial is generally reviewed for an abuse of discretion. *Papakostas v. State*, 145 S.W.3d 723, 725 n.2 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.) (citing *Moore v. State*, 670 S.W.2d 259, 261 (Tex. Crim. App. 1984)); *see also Smith v. State*, No. 13-15-00442-CR, 2016 WL 3911239, at *2 (Tex. App.—Corpus Christi–Edinburg July 14, 2016, pet. ref'd) (not designated for publication). "The voluntariness of a defendant's absence is generally judged in hindsight on appeal and an appellate court will not disturb the trial court's finding that a defendant voluntarily absented himself from the trial court proceedings when the defendant fails to put on any evidence to refute that determination." *Simon v. State*, 554 S.W.3d 257, 265 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Kline v. State*, 737 S.W.2d 895, 900 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd)).

B.     Discussion

Here, the record demonstrates that Cuellar refused to leave his cell on the second and third day of trial. As to the second day of trial, Deputy Greene testified that Cuellar was not going to return to the courtroom from his cell. Deputy Greene also testified "And [Cuellar] says that if you forcefully make him come up here, bring everything you have[,]" indicating Cuellar would not return to the courtroom voluntarily. On the third day of trial,

Investigator Bubela testified that Cuellar did not want to go to the courtroom that morning and opined that the use of force would be necessary to compel Cuellar's attendance. Thus, there was evidence before the trial court supporting its conclusion that Cuellar's absence from the trial was voluntary. *See Gittens*, 560 S.W.3d at 737.

Cuellar argues that the trial court's finding of his voluntary absence cannot be supported "solely through the testimony of a non-party witness," but he cites no authority for that proposition, and we have found none. In light of the absence of evidence to refute the trial court's determination that Cuellar voluntarily absented himself from trial[2]— evidence that could have been presented during the punishment phase, in a motion for new trial, or otherwise—we cannot conclude that the trial court abused its discretion. *See Moore*, 670 S.W.2d at 261; *Simon*, 554 S.W.3d at 265; *Papakostas*, 145 S.W.3d at 725 n.2; *see also Amador v. State*, No. 13-19-00562-CR, 2021 WL 5456661, at *8 (Tex. App.—Corpus Christi–Edinburg Nov. 23, 2021, pet. ref'd) (mem. op., not designated for publication) (holding that the trial court did not abuse its discretion in denying appellant's motion for mistrial based on its determination that the appellant voluntarily absented herself because the record demonstrated that she refused to be transported from her cell to the courthouse the morning of her punishment hearing); *Smith*, 2016 WL 3911239, at *2. Accordingly, we overrule Cuellar's second issue.

### IV.    CONTINUANCE & RIGHT TO COUNSEL OF CHOICE

In his third issue, Cuellar claims that the trial court abused its discretion when it

---

[2] Cuellar points out that he was present for voir dire on November 1, 2021 and for trial on November 2, 2021, and the morning of November 3, 2021. However, this does not refute the evidence demonstrating that Cuellar voluntarily absented himself after the lunch recess on November 3, 2021, and the entirety of November 4, 2021.

denied his request for a continuance. In this same issue, Cuellar claims that he was denied his right to "select the counsel of his choice in violation of the Sixth Amendment to the United States Constitution, Article I § 10 of the Texas Constitution, and Texas Code of Criminal Procedure Article 1.05." We address the two sub-issues separately.

On the morning of November 1, 2021, prior to voir dire, Cuellar asked the trial court for "a change of lawyer," indicated he was not ready for trial, and stated he "need[ed] some time because" he was "not mentally stable right now." The trial court asked Cuellar, "Why has there not been adequate time for [him] to prepare for trial[,]" and Cuellar responded that he had only seen his lawyer twice. The trial court asked Cuellar, "What is it that you would have had [counsel] do that [counsel] hasn't done?", and Cuellar replied: "Well, probably get more information on everything what was going on and, well, my defense to be—I mean, I'm not aware of a lot of things right now, sir." Cuellar also mentioned the State's plea offer and that he "wanted to sign with some time" and "to get it out the way." Cuellar then reiterated that he was not mentally stable, could not focus, and was "recently suicidal."

After the State provided its response to Cuellar's request, the trial court asked Cuellar's counsel if he wished to put anything on the record. Cuellar's counsel stated:

> . . . [M]y last two appearances with [Cuellar,] he terminated both interviews before we could go over all the information that would be relevant to a defendant in a case by getting up and leaving the meeting of which I had no control over him doing that.
>
> It was made clear to him what the offer was. The offer has been the offer for as long as I can remember now, and it's been relayed to him repeatedly. He last turned down that offer on our trial call docket that— whatever date that was. Last week I think.

. . .

He turned that down on that date as well, which is when we suddenly became number one for trial. And I went to see him again subsequent to that and he refused to go over the evidence with me. So I don't know what more I can do at this point as far as trying to provide him the information that would be necessary for him to assist in his defense.

. . .

But I don't believe it's a mental issue as much as it is a willful failure to cooperate I guess.

The trial court then indicated that it understood Cuellar's statement as a request to have another attorney appointed and that he wanted more time to review his case. The trial court then denied both requests and indicated trial would proceed "today."

## A.    Continuance

In this sub-issue, Cuellar argues that the trial court abused its discretion when it denied his oral motion for continuance. Motions for continuance in criminal proceedings must be in writing and set forth sufficient cause for the continuance. *See* TEX. CODE CRIM. PROC. ANN. art. 29.03. Moreover, "[a]ll motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." *Id.* art. 29.08. A motion for continuance that is not sworn preserves nothing for appellate review. *See Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012).

Here, nothing in the record demonstrates that Cuellar filed a written and sworn motion for continuance as required by the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 29.03. Therefore, Cuellar has preserved nothing for our review. *See Blackshear*, 385 S.W.3d at 591; *see also* TEX. R. APP. P. 33.1(a). We overrule this sub-issue.

12

**B.**     **Right to Counsel**

   **1.**     **Standard of Review & Applicable Law**

We review a trial court's ruling denying the appointment of substitute counsel for abuse of discretion. *See Carroll v. State*, 176 S.W.3d 249, 256 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (citing *Burgess v. State*, 816 S.W.2d 424, 428–29 (Tex. Crim. App. 1991)). "The trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles." *Johnson v. State*, 352 S.W.3d 224, 227 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). If the trial court's ruling falls within the "zone of reasonable disagreement," then it has not abused its discretion, and we will uphold its ruling. *Id.* "Under this standard, we may only consider the information presented to the trial court at the time of its decision." *Id.* at 227–28.

"The right of the accused to counsel, both at trial and on appeal, is fundamental." *In re Fletcher*, 584 S.W.3d 584, 588 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (quoting *Buntion v. Harmon*, 827 S.W.2d 945, 948–49 (Tex. Crim. App. 1992)). "Under the Sixth and Fourteenth Amendments, an indigent defendant is entitled to the appointment of counsel." *Id.* (first citing *Gideon v. Wainwright*, 372 U.S. 335, 342–44 (1963); and then citing U.S. CONST. amends. VI, XIV). However, "an indigent defendant does not have the right to the appointment of counsel of choice." *Id.* (quoting *Stearnes v. Clinton*, 780 S.W.2d 216, 221 (Tex. Crim. App. 1989)).

"The defendant must accept counsel assigned by the court unless he or she effectively waives the right to counsel for self-representation or can show adequate cause for appointment of a different attorney." *Reddic v. State*, 976 S.W.2d 281, 283 (Tex.

App.—Corpus Christi–Edinburg, 1998 pet. ref'd) (citing *Thomas v. State*, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977)); *see also* TEX. CODE CRIM. PROC. ANN. art. 26.04(j)(2) ("An [appointed] attorney . . . shall . . . represent the defendant until . . . permitted or ordered by the court to withdraw as counsel for the defendant after a finding of good cause . . . ."). A trial court is under no duty to search until it finds an attorney agreeable to the defendant. *Reddic*, 976 S.W.2d at 283 (citing *Malcom v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. 1982)). When a trial court appoints an attorney to represent the indigent defendant, the defendant has received the protections provided under the Sixth and Fourteenth Amendments. *Id*. "[T]he defendant may not manipulate his right to counsel so as to obstruct the orderly procedure in the court or interfere with the fair administration of justice and must, in some circumstances, yield to the general interest of prompt and efficient justice." *Carroll*, 176 S.W.3d at 256 (first citing *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000); and then citing *Garner v. State*, 864 S.W.2d 92, 98 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd)).

### 2. Discussion

Cuellar characterizes his counsel's statements as evidence of a personality conflict; however, "personality conflicts and disagreements concerning trial strategy are typically not valid grounds for withdrawal[ of counsel]." *Barnett v. State*, 344 S.W.3d 6, 24 (Tex. App.—Texarkana 2011, pet. ref'd) (quoting *King*, 29 S.W.3d at 566). "Furthermore, a defendant cannot wait until the day of trial to demand different counsel or to request that counsel be dismissed so that he or she may retain other counsel." *Temple v. State*, 581 S.W.3d 812, 818 (Tex. App.—Texarkana 2019, no pet.) (cleaned up); *see also*

14

*Robles v. State*, 577 S.W.2d 699, 704 (Tex. Crim. App. 1979).

The record shows that Cuellar's counsel was appointed to represent Cuellar on April 13, 2021. Cuellar waited until the morning of the first day of trial, November 1, 2021, just prior to voir dire, to notify the trial court of his dissatisfaction with his appointed counsel and request for substitute counsel. However, Cuellar did not waive his right to counsel or seek to represent himself. *See Reddic*, 976 S.W.2d at 283. Furthermore, nothing in the record demonstrates that Cuellar had sought to retain counsel. The trial court could have determined that granting Cuellar's request for new counsel in these circumstances would obstruct the judicial process or interfere with the administration of justice. *See Carroll*, 176 S.W.3d at 256; *see also Temple*, 581 S.W.3d at 818. Moreover, Cuellar's counsel stated that Cuellar had twice left meetings "before [they] could go over all the information that would be relevant to a defendant in a case," that Cuellar "refused to go over the evidence with" him, that Cuellar had been informed of the State's plea offers and rejected them, and that he did not believe Cuellar had a mental issue but was willfully failing to cooperate. The trial court could have found counsel's statements credible and rejected Cuellar's allegations that he had received no information or evidence about his case from his appointed counsel. In addition, the record contains evidence that Cuellar's counsel provided adequate assistance.

Accordingly, the trial court did not abuse its discretion in denying Cuellar's last-minute request for substitute appointed counsel.[3] *See Carroll*, 176 S.W.3d at 256; *see*

---

[3] We note that Cuellar's appointed counsel never sought to withdraw from representing Cuellar and remained his attorney at trial. Thus, Cuellar received the protections provided under the Sixth and Fourteenth Amendments. *See Reddic v. State*, 976 S.W.2d 281, 283 (Tex. App.—Corpus Christi–Edinburg, 1998 pet. ref'd).

*also Burgess*, 816 S.W.2d at 429 (holding that when a trial court is confronted with an accused who makes a last-minute request for change of counsel, "unless the trial court allows new counsel, it must compel an accused who will not waive counsel and does not assert his right to self-representation to proceed to trial with the lawyer he has, whether he wants to or not"). We overrule this sub-issue and the entirety of Cuellar's third issue.

## V. MISTRIAL

In his fourth issue, Cuellar claims that the trial court abused its discretion when it denied his motion for mistrial.

On November 2, 2021, Cynthia Kruppa, an employee of the Jackson County Sheriff's Office and registrar for sex offenders for Jackson County, testified that Cuellar was a registered sex offender. Kruppa also testified that she maintained a file for Cuellar as part of her duties as registrar. The following colloquy occurred:

| | |
|---|---|
| [The State]: | Okay. This particular Defendant . . . Jason Cuellar. As part of your file, do you also receive . . . from CPS and some of I guess the . . . underlying offense reports? |
| [Kruppa]: | Yes. |
| [The State]: | Okay. In your file and with your awareness, how many victims has he committed aggravated sexual assault or indecency with for which he is convicted? Just the convictions only. |
| [Kruppa]: | The convictions? |
| [The State]: | Yeah. |
| [Kruppa]: | Two. |
| [The State]: | Okay. And with the CPS reports, how many victims are there alleged? |

16

| | |
|---|---|
| [Kruppa]: | It indicated four. |
| [The State]: | Okay. Are any of these victims or purported victims relatives? |
| [Kruppa]: | Yes. |
| [The State]: | How many? |
| [Kruppa]: | All four I believe. |

Cuellar's counsel did not object to the testimony.

The next morning, November 3, 2021, outside the presence of the jury, Cuellar's counsel requested a mistrial, claiming that Kruppa's testimony regarding CPS records was a reference to "uncharged conduct" involving victims other than those involved in the crimes of which Cuellar was convicted. Cuellar's counsel further alleged that he was unaware of the "uncharged conduct" because he had not been provided the CPS records by the State and that the "uncharged conduct" was not listed in the State's notice of its intent to introduce extraneous offense evidence. *See* TEX. R. EVID. 404(b)(2); TEX. CODE CRIM. PROC. ANN. art. 39.14 (concerning discovery). The State admitted that Cuellar had not received "one page" which listed the names of victims, but claimed the victims related to the offenses for which Cuellar was convicted, and that Cuellar's counsel already had some of the information from the missing page. Cuellar's counsel admitted that he had not objected to the complained-of testimony at the time because he had assumed he "missed the[]document" but later realized that he had not received the document. The trial court pronounced that it was going to instruct the jury to disregard and not allow further testimony regarding victims of unadjudicated offenses. The trial court provided the following instruction to the jury:

One other matter. Ladies and gentlemen, yesterday during the witness Ms. Kruppa's testimony there was a reference to other—I think the term might have been unadjudicated victims of offenses that—and I am instructing you to disregard any reference to unadjudicated victims of offenses that—and the witness' response to that question yesterday. And they are—that statement by the witness is not to be considered by you for any purpose whatsoever. It is not evidence in this case, and any decision that you would make in taking that into consideration would be error on your part. So I'm instructing you not to do that. Very well. Thank you.

## A.    Standard of Review & Applicable Law

To preserve error, an appellant must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. TEX. R. APP. P. 33.1(a); *see Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). "In accordance with Rule 33.1, a motion for mistrial must be both timely and specific." *Griggs*, 213 S.W.3d at 927 (citing *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) (en banc)). "A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent." *Id.* (citing *Wilkerson v. State*, 881 S.W.2d 321, 326 (Tex. Crim. App. 1994) (en banc)).

We review a trial court's denial of a mistrial for an abuse of discretion, and we must uphold a judge's decision denying a mistrial if it was in the zone of reasonable disagreement. *Archie v. State*, 340 S.W.3d 734, 738–39 (Tex. Crim. App. 2011); *see Griffin v. State*, 571 S.W.3d 404, 416 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (first citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); and then citing *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)). "A mistrial halts trial

18

proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id.* (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). "Whether an error requires a mistrial must be determined by the particular facts of the case." *Id.*

Evaluating whether a mistrial should have been granted is similar to performing a harm analysis in that it involves most, if not all, of the same considerations. *Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007). To review the denial of a motion for mistrial in the punishment phase of a non-capital case, "[w]e balance three factors: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed)." *Hawkins*, 135 S.W.3d at 77.

**B.    Discussion**

In the instant case, Cuellar's motion for mistrial was untimely and unpreserved. The grounds for Cuellar's motion for mistrial first became apparent during Kruppa's testimony, but Cuellar failed to object or move for mistrial until trial resumed the next morning. *See* TEX. R. APP. P. 33.1(a); *Griggs*, 213 S.W.3d at 927 (quoting *Young*, 137 S.W.3d at 70) ("If a party delays [his] motion for mistrial, and by failing to object allows for the introduction of further objectionable testimony or comments and greater accumulation of harm, the party could no more rely on the untimely motion for mistrial than on an untimely objection.").

Even if Cuellar timely preserved his motion for mistrial, "[g]enerally, an instruction to disregard cures the prejudicial effect." *Williams v. State*, 417 S.W.3d 162, 172 (Tex.

19

App.—Houston [1st Dist.] 2013, pet. ref'd) (cleaned up). "An instruction to disregard attempts to cure any harm or prejudice resulting from events that have already occurred." *Foyt v. State*, 602 S.W.3d 23, 49 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (citing *Young*, 137 S.W.3d at 69). "When the prejudice is curable, the instruction eliminates the need for a mistrial." *Id.* (citing *Young*, 137 S.W.3d at 69).

We generally presume that the jury follows the trial court's instructions in the manner presented. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). "The presumption is refutable, but the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instructions." *Thrift*, 176 S.W.3d at 224. This is because "[t]he degree of harm demonstrated by an appellant must be actual, not merely theoretical." *Bradshaw v. State*, 244 S.W.3d 490, 497–98 (Tex. App.—Texarkana 2007, pet. ref'd). Here, no such showing has been made and Cuellar does not suggest on appeal that residual prejudice remained after the trial court instructed the jury to disregard the complained-of testimony. *See Ocon*, 284 S.W.3d at 884–85 ("Because it is an extreme remedy, a mistrial should be granted 'only when residual prejudice remains' after less drastic alternatives are explored.").

We note that the trial court did not expressly determine whether the State violated Article 39.14 by failing to disclose the CPS records at issue. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14. Even assuming the trial court ruled that the State violated Article 39.14 by failing to disclose the CPS records, the complained-of testimony did not explicitly refer to "uncharged conduct," and no specific details of the alleged acts constituting the

20

"uncharged conduct" were elicited from Kruppa. In other words, the magnitude of the prejudicial effect of the complained-of testimony was not severe. *See Hawkins*, 135 S.W.3d at 77.

Cuellar pleaded guilty in the presence of the jury to the present offense, and the State presented evidence and testimony regarding said offense during the punishment phase. The evidence demonstrated that Cuellar not only possessed a deadly weapon—a shotgun—but that he had also fired it. In addition, the jury was presented evidence of Cuellar's numerous prior felony convictions: aggravated sexual assault, indecency with a child,[4] aggravated robbery, and burglary of a habitation. Furthermore, the State presented evidence of other unadjudicated offenses not related to the complained-of testimony, including multiple instances of Cuellar's failure to comply with his duty to register as a sex offender and arrests for possession of methamphetamine, criminal trespass, and assault causing bodily injury involving family violence. Finally, the State did not reference the complained-of testimony in its closing arguments to the jury at the end of the punishment phase. Cuellar has not shown that the punishment assessed would have been different absent the misconduct. *See Hawkins*, 135 S.W.3d at 77. We conclude that the trial court did not abuse its discretion in denying Cuellar's request for mistrial. *See Archie*, 340 S.W.3d at 738–39; *Griffin*, 571 S.W.3d at 416. Accordingly, we overrule Cuellar's fourth issue.

## VI. MODICATION OF JUDGMENT

The judgment of conviction for unlawful possession of a firearm by a felon states

---

[4] The record reflects Cuellar had two convictions relating to indecency of a child.

that the date of offense is May 6, 2021. We modify the judgment to recite the correct date of offense: May 6, 2020. *See Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (noting that we have the power to modify a judgment to speak the truth when we are presented with the necessary information to do so).

## VII.   CONCLUSION

We affirm the judgment of the trial court as modified.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
23rd day of March, 2023.

22