

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00266-CR

———————————————————

KENNETH DWAYNE AUGUST, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 0947650AR

---

Before Sudderth, C.J.; Birdwell and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Kenneth August appeals the trial court's denial of his motion for postconviction DNA testing under Chapter 64 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. arts. 64.01, .05. He claims that the trial court erred by denying his request to have various pieces of evidence tested, that he was entitled to but deprived of counsel in the Chapter 64 proceeding, and that he was erroneously excluded from the unrecorded Chapter 64 hearing.[1] Because August failed to present a viable argument that the results from his requested DNA tests would have probably prevented his conviction, the trial court did not err by denying his motion for DNA testing, nor did it err by declining to appoint counsel. And as for the hearing, August was not excluded from anything because no hearing occurred.

We will affirm.

## I. Background

August is currently serving a life sentence for capital murder based on his participation in the robbery and murder of a drug dealer.

---

[1] August's three issues are reordered for organizational purposes.

## A.     Underlying Conviction[2]

In 2002, August, his relative Marcus August,[3] and two other men—Allan Powell and Derrick Price—decided to rob a drug dealer. Marcus commented that he would kill the dealer if the dealer saw his face, and August had a shotgun in his car, so the group retrieved shotgun shells before they went to the drug dealer's apartment.

Upon arrival, August went into the apartment to purchase drugs and reported back that the dealer was alone. Marcus and Allan then knocked on the dealer's door, and when he answered, Marcus shot him with the shotgun. August joined the group in stealing drugs and guns from the apartment, and he had a stolen gun in his possession when he was arrested. *See August*, 2006 WL 1174213, at *2.

Two of the dealer's customers spoke with August on the day of the shooting. *See id.* at *1–2. The first—Jodie Williams—saw August before the shooting, and he told her that he was going to "jack" (i.e., rob) the dealer. *Id.* at *1. She heard gunshots about five minutes later. *Id.* Then, after the police responded to the shooting, another drug user—LaWanda Moore—was walking in the vicinity of the

---

[2]The facts recited herein are based on the trial court's findings of fact and conclusions of law as well as our discussion of the case in August's direct appeal. *See August v. State*, No. 2-04-484-CR, 2006 WL 1174213, at *1–2 (Tex. App.—Fort Worth May 4, 2006, pet. ref'd) (per curiam) (mem. op, not designated for publication).

[3]The trial court's findings describe Marcus as August's brother, but our prior opinion described him as August's cousin. *See id.* at *2. And August's mother and grandmother, in affidavits attached to August's Chapter 64 motion, described Marcus as August's cousin. The specific familial link between the two men is immaterial to this appeal.

dealer's apartment, and she saw August and Marcus. *Id.* at *2. August asked LaWanda to take him to see Jodie, and Jodie later testified that August told her he had "jacked" the dealer. *Id.* August gave Jodie and LaWanda cocaine, and according to LaWanda, August had dealer quantities of the drug. *Id.*

August was indicted for capital murder, and one of the State's theories of liability was that he was a party to the offense. *Id.* at *1–2.

Before trial, the State sent several items for DNA testing. The results either excluded August or were inconclusive:

- Blood samples from the dealer's apartment were matched to the dealer.

- A toboggan hat found on the sidewalk near the dealer's apartment had an insufficient amount of quality DNA so the test was inconclusive.

- A baseball cap found in the dealer's living room (1) returned no DNA profile from the cap's back band and (2) returned a two-person DNA mixture from the cap's front band, with the dealer, August, and all three accomplices excluded as sources.

These DNA results were admitted into evidence at trial. As for witnesses, accomplices Allan and Derrick both testified at August's trial, as did Jodie, LaWanda, and another woman who saw the group of four together that day and saw blood spots on Marcus's shirt after the shooting. *See id.*

August was convicted and received an automatic life sentence, and we affirmed that conviction on direct appeal. *Id.* at *1–3.

## B.    Post-Conviction Motion for DNA Testing

More than a decade later, August filed a motion for postconviction DNA testing.  *See* Tex. Code Crim. Proc. Ann. art. 64.01.   The motion identified 13 categories of evidence that he sought to have tested, although for many of those categories, his explanations revealed that he did not seek DNA testing but rather a general reexamination of that part of his case—a new autopsy, a new psychological exam, a new ballistics analysis, a new inspection of his vehicle, a new fingerprint analysis, new drug testing for the substances found in the dealer's home, and verification of the chain of custody for various items.   Even liberally reading his motion, the items for which he appeared to seek DNA testing were limited to three categories of evidence from August's apartment or person:

> (1)    the drugs, clothes, and items found in August's home;
>
> (2)    August's car; and
>
> (3)    the hair, blood, and similar samples collected from August after his arrest;

and five items from in or around the dealer's apartment:

> (1)    a skullcap;
>
> (2)    cigarette butts;
>
> (3)    the money found on the dealer and in his home;[4]

---

[4]It is unclear if August sought to have the money tested for fingerprints, for DNA, or both.  Since Chapter 64 relates to DNA testing, for purposes of our Chapter

5

(4)     the drugs in the dealer's home; and

(5)     the gun stolen from the dealer's apartment and later found in August's possession.

Although August admitted that he had purchased drugs from the dealer just before the murder and that he, Marcus, Allan, and Derrick had discussed robbing the dealer, August insisted that he "was just following those guys" and had not known that they would shoot the dealer.[5] He claimed that DNA testing would establish his innocence by debunking specific details of Allan's and Derrick's stories and by showing that he had not possessed the stolen gun, worn the skullcap, or been in the dealer's apartment during or after the murder.

The State filed lists of the items in its possession that contained "potential biological evidence related to this case,"[6] and it argued that August was not entitled to DNA testing in part because any results would probably not have prevented his conviction. *Cf.* Tex. Code Crim. Proc. Ann. arts. 64.02(a)(2), .03(a)(2)(A).

---

64 analysis, we assume that he sought to have the money tested for DNA. *See generally* Tex. Code Crim. Proc. Ann. arts. 64.01(a-1), .03.

[5]August places great weight on his assertion that he was not the gunman. That fact was not dispositive. The group went to the scene of the offense with a shotgun. *Cf. Gittens v. State*, 560 S.W.3d 725, 736 (Tex. App.—San Antonio 2018, pet. ref'd) (stating that factfinder "could have . . . reasonably determined [the defendant] should have anticipated that by using firearms during the commission of the robbery, someone at the residence could be killed").

[6]The lists were very broad; even copies of the indictments, photospreads, and crime-scene photos were included.

After considering August's Chapter 64 motion and the State's response, the trial court adopted the State's proposed findings of fact and conclusions of law,[7] and it denied August's Chapter 64 motion without a hearing.[8]

---

[7]One of the State's proposed findings does not apply to this case. The State asked the trial court to find that "[s]ignificant evidence unrelated to any swabs collected during V.P.'s sexual assault examination establishes that the defendant sexually assaulted V.P." The State has not cited any evidence of sexual assault in this case, and the dealer's initials were not V.P. The proposed finding appears to have been inadvertently imported from another case. But when the trial court adopted the State's proposed findings and conclusions as its own, it adopted the erroneous finding as well. And the State did not identify the error when it recited the findings of fact and conclusions of law in its brief.

Regardless, although this erroneous statement is labeled a finding of fact, it is an application of law to fact, and because it does not turn on credibility or demeanor, it does not bind us. *Cf. Rivera v. State*, 89 S.W.3d 55, 59–60 (Tex. Crim. App. 2002) (listing findings entitled to deference, noting that "whether a reasonable probability exists that exculpatory DNA tests would prove innocence is an application-of-law-to-fact question that . . . is . . . reviewed *de novo*," and concluding that exculpatory test results would not outweigh other evidence of appellant's guilt).

[8]Although the trial court was not required to certify the defendant's right to appeal, it did so anyway. *See* Tex. R. App. P. 25.2(a)(2); *cf.* Order Amending Texas Rule of Appellate Procedure 25.2, Misc. Docket No. 18-9149 (Tex. Nov. 5, 2018) (amending rule such that certification is not required for order appealable under Chapter 64); Order Amending Texas Rule of Appellate Procedure 25.2, Misc. Docket No. 18-021, (Tex. Crim. App. Oct. 30, 2018) (same). But the certification states that the defendant has no right of appeal, which is incorrect. *See* Tex. Code Crim. Proc. Ann. art. 64.05. Because this error is in a superfluous certification, though, it does not require dismissal. *See* Tex. R. App. P. 25.2(a)(2), (d).

## II. Standard of Review[9]

When reviewing a trial court's ruling on a Chapter 64 motion, we apply a bifurcated standard of review, giving "almost total deference to the judge's resolution of historical fact issues supported by the record and applications-of-law-to-fact issues turning on witness credibility and demeanor" while reviewing de novo legal questions and all other application-of-law-to-fact questions. *Reed v. State*, 541 S.W.3d 759, 768–69 (Tex. Crim. App. 2017); *Coleman v. State*, No. 02-22-00089-CR, 2023 WL 2430027, at *2 (Tex. App.—Fort Worth Mar. 9, 2023, pet. ref'd) (quoting *Reed*); *see Ex parte Gutierrez*, 337 S.W.3d 883, 890 (Tex. Crim. App. 2011).

## III. Discussion

August raises three issues on appeal:[10] (1) that he was entitled to DNA testing; (2) that he was entitled to but denied counsel; and (3) that the trial court erroneously

---

[9]Citing federal authorities, August contends that, because he "is a lay man of the law, unskilled and without training in the drafting of legal papers . . . he is entitled to a less stringent standard than those filed by lawyers." State case law holds otherwise: "A pro se appellant is held to the same standards as a licensed attorney." *Carte v. State*, No. 2-03-324-CR, 2004 WL 1636010, at *2 (Tex. App.—Fort Worth July 22, 2004, no pet.) (per curiam) (mem. op., not designated for publication); *see Bender v. State*, No. 02-17-00342-CR, 2018 WL 4401745, at *7 n.9 (Tex. App.—Fort Worth Aug. 23, 2018, no pet.) (mem. op., not designated for publication) (similar).

[10]In his brief, August characterizes this proceeding as an appeal from his trial court conviction and from our 2006 opinion affirming that conviction. A good deal of his brief is devoted to disputing the merits of his conviction.

excluded him from the Chapter 64 hearing and the court reporter erroneously failed to record that hearing.[11]

## A. August was not entitled to DNA testing.

First, August argues that the trial court erred by denying his motion for DNA testing. He claims that if the evidence listed in his Chapter 64 motion had been tested, the test results would have demonstrated that he had no part in the crime. We disagree—results from the requested DNA tests were unlikely to have prevented August's conviction.

Chapter 64 authorizes a convicting court to order postconviction DNA testing only if it finds, among other things, that it is more likely than not that "the person would not have been convicted if exculpatory results had been obtained through DNA testing."[12] Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(A). The convicted

---

[11]August also attempts to collaterally attack his conviction, arguing that his Due Process rights were violated by the State's reliance on "snitch" testimony and that the nonaccomplice evidence was insufficient to support his conviction. We addressed and rejected the latter argument in August's direct appeal. *See August*, 2006 WL 1174213, at *1–2. Plus, "Chapter 64 does 'not confer jurisdiction upon this court to entertain collateral attacks on the trial court's judgment or to review, under the guise of a DNA testing appeal, anything beyond the scope of those articles.'" *Gowan v. State*, No. 02-18-00032-CR, 2020 WL 1949015, at *8 (Tex. App.—Fort Worth Apr. 23, 2020, pet. ref'd) (per curiam) (mem. op., not designated for publication) (quoting *Reger v. State*, 222 S.W.3d 510, 513 (Tex. App.—Fort Worth 2007, pet. ref'd)).

[12]We review this application-of-law-to-fact question de novo. *Gutierrez*, 337 S.W.3d at 895 n.36; *Wright v. State*, No. 02-06-152-CR, 2007 WL 174920, at *2 (Tex. App.—Fort Worth Jan. 25, 2007, no pet.) (mem. op., not designated for publication).

person bears the burden to prove this by a preponderance of the evidence. *Id.* art. 64.03(a)(2).

"[I]f DNA testing would not determine the identity of the person who committed the offense or would not exculpate the accused, then the requirement of Article 64.03(a)(2)(A) [that exculpatory results would probably have prevented the conviction] has not been met." *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008) (noting that this requirement is related to another Chapter 64 requirement—the requirement that identity be an issue). Here, none of the eight categories of evidence that August sought to have tested would have determined the identity of the person who committed the offense, proved August's noninvolvement, or probably have prevented August's conviction. *See id.*

For the three categories of evidence from August's home or person—(1) the drugs, clothes, and items in his home; (2) his car; and (3) his hair, blood, and similar samples—it is difficult to understand why August contends that these tests would produce "exculpatory results" that "exclud[e] the convicted person as the donor of the DNA." *Hall v. State*, 569 S.W.3d 646, 655–56 (Tex. Crim. App. 2019) (reciting meaning of exculpatory results). August's hair and blood in particular would undoubtedly contain his own DNA. *Cf. Gutierrez*, 337 S.W.3d at 900 (noting that if victim's blood sample were tested, "[t]he DNA from [the victim] will undoubtedly be her own"). August fails to explain how such test results could be exculpatory. *See Reed*, 541 S.W.3d at 774 (noting that courts assume without deciding that DNA test

10

results would be favorable to the incarcerated person). We also fail to see how such results could be exculpatory as they would not determine the identity of the person who murdered the dealer or make it less likely that August committed the crime as a party.

As for the other five categories of evidence that August sought to have tested—the skullcap,[13] gun, cigarette butts, drugs, and money that were in or from the dealer's apartment—August has not explained why the DNA found on these items would necessarily identify the murderer or cast doubt on his conviction. It is undisputed that the dealer sold drugs out of his apartment, *see August*, 2006 WL 1174213, at *1, so any number of people could have left DNA on the items in or around his residence. *See Hernandez v. State*, No. 13-20-00216-CR, 2022 WL 324069, at *4 (Tex. App.—Corpus Christi–Edinburg Feb. 3, 2022, pet. ref'd) (mem. op., not designated for publication) (noting that "DNA analysis is more probative when the number of potential DNA contributors to an item of evidence is reasonably limited," and holding appellant failed to show that exculpatory results would probably have prevented conviction when golf club used in assault at store could have DNA from "any number of shop-goers"). In fact, August conceded that he himself had been

---

[13]It is unclear if the "skullcap" August references is the same as the toboggan hat that was DNA tested before his trial. To the extent that it is, the trial court could have denied retesting the hat because August offered no evidence that, "although previously subjected to DNA testing," the hat "c[ould] be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." Tex. Code Crim. Proc. Ann. art. 64.01(b)(2).

"present at [the dealer's] home to briefly purchase drugs" just before the murder, so he was among those who could have deposited DNA on the items in or around that apartment. *Cf. id.*

Moreover, "[i]n cases involving accomplices, the burden is more difficult because there is not a lone offender whose DNA must have been left at the scene." *Gutierrez*, 337 S.W.3d at 900. August was convicted as an accomplice under the law of parties—he was found to have been a member of the four-person group that robbed and killed the dealer. *See August*, 2006 WL 1174213, at *1–2. To be entitled to DNA testing, then, August was required to show that exculpatory results would establish that he did not commit the crime as either a principal or a party. *See Gutierrez*, 337 S.W.3d at 900.

And August's requested DNA tests would not do that. Although he denies his own involvement in the murder, he does not dispute the identities of the other three members of the group—Marcus, Allan, and Derrick—nor does he dispute that they robbed and murdered the dealer. So even if the items from the dealer's apartment were tested, and even if the DNA results excluded August and identified one of the other three perpetrators—Marcus, Allan, or Derrick—such results would say nothing about August's participation in the plot as a party. *Cf. Gutierrez*, 337 S.W.3d at 900–01.

The Court of Criminal Appeals held as much in a similar robbery–murder case tried under the law of parties. *See id.* at 894, 899–902. There, as here, the appellant's

two accomplices had confessed, and although the appellant admitted to participating in the robbery, he claimed that he was not the one who killed the victim. *Id.* at 887–88, 899. He sought postconviction DNA testing of several items from the victim's home and person, claiming that the items would prove he did not commit the murder and was not in the home when it happened. *Id.* at 888, 899–900. The Court of Criminal Appeals concluded that exculpatory results were unlikely to have prevented the conviction. *Id.* at 899–902.

Even if the appellant's DNA were not on the items inside the victim's home, the court explained, there was no reason to think that those items necessarily had the DNA of the murderer. *Id.* at 900–01. Plus, the case had been tried under the law of parties, so even if the DNA tests excluded the appellant, "[i]t would not establish that [the] appellant, who admittedly masterminded 'the rip-off,' was not a party to [the victim]'s murder." *Id.* at 901; *see Wilson v. State*, 185 S.W.3d 481, 485 (Tex. Crim. App. 2006) (affirming denial of DNA testing and explaining that even if "DNA testing showed that another perpetrator was involved, that finding would not exonerate appellant because it would show nothing more than there was another party to the crime").

Similarly here, even if August's DNA were not found on any of the eight categories of evidence listed in his motion, there is no reason to think that the DNA on those items would establish that August was not a party to the offense, so any results would probably not have prevented August's conviction. *See* Tex. Code Crim.

13

Proc. Ann. art. 64.03(a)(2)(A). Consequently, he was not entitled to DNA testing under Chapter 64. *See id.*

We overrule this issue.

**B.      August was not entitled to counsel.**

August also argues that he was entitled to but erroneously denied court-appointed counsel in the Chapter 64 proceeding. Again we disagree.[14]

An indigent convicted person who files a postconviction motion for DNA testing has a limited right to appointed counsel, and that right is "conditioned on the trial judge's finding 'that reasonable grounds exist for the filing of a motion.'" *Gutierrez*, 337 S.W.3d at 889; *see* Tex. Code Crim. Proc. Ann. art. 64.01(c); *Gowans v. State*, No. 01-19-00902-CR, 2020 WL 7391712, at *2 (Tex. App.—Houston [1st Dist.] Dec. 17, 2020, no pet.) (mem. op., not designated for publication) ("A motion requesting court-appointed counsel and a motion requesting post-conviction DNA testing are intertwined."). Reasonable grounds for testing are not present unless the convicted person presents "a valid or viable argument" that, among other things, test results "could plausibly show that [he] would not have been convicted." *Gutierrez*, 337 S.W.3d at 891–92 (internal quotation marks omitted) (noting that if a result "would

---

[14]August asserts that he filed a motion for appointed counsel in our court and that we did not rule on the motion. Our records contain no such motion. But August asked the trial court to appoint appellate counsel when he filed his notice of appeal in that court, and his statements in a subsequent appellate motion imply that the trial court denied his request.

not change the probability that the inmate would still have been convicted, then there are no reasonable grounds to appoint an attorney").

For the reasons already discussed, August's motion did not present a viable argument that DNA test results would probably have prevented his conviction. Even if August's proposed DNA tests returned negative results—despite some of those tests being performed on his own hair, blood, and personal possessions—August did not plausibly show that the DNA on those items would identify the murderer or disprove his involvement as a party to the offense. Because August did not establish reasonable grounds for the filing of the motion, he was not entitled to an appointed attorney. *See Gowans*, 2020 WL 7391712, at *5 (holding trial court did not err by denying counsel when appellant failed to show, among other things, that there was a reasonable probability that exculpatory DNA results would have prevented his conviction).

We overrule this issue.

## C. No hearing occurred, and none was required.

August further argues that he was erroneously excluded from the Chapter 64 hearing at which the trial court ruled on his motion for DNA testing. He complains that he was not informed of the hearing, that he was not provided the opportunity to participate, and that the court reporter did not record the hearing. But this is because no hearing occurred.

15

Nothing in the record indicates that the trial court held a hearing on August's Chapter 64 motion, and the State confirms that it did not.[15] Nor was the trial court required to hold such a hearing. *See Gutierrez*, 337 S.W.3d at 893 (reiterating that Chapter 64 "does not require any evidentiary hearing before the trial judge decides whether a convicted person is entitled to DNA testing" and noting that even "if a hearing is held, the convicted person has no right to be present"); *Rivera*, 89 S.W.3d at 58–59 (holding that Chapter 64 does not require a pre-test hearing and that "any evidentiary issues arising under Article 64.03 could be resolved by affidavits, which could be submitted by the convicted person along with his motion"). Thus, August was not excluded from any Chapter 64 hearing.

August also asserts that he is entitled to an automatic reversal because the court reporter failed to make a record of the hearing. As explained above, however, there was no hearing, so there was nothing for the court reporter to transcribe.

We overrule August's final issue.

---

[15]In August's brief, he too asserts there was no hearing.

## IV.  Conclusion

Having overruled all three of August's issues, we affirm the trial court's denial

of August's Chapter 64 motion for postconviction DNA testing.[16]

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  June 8, 2023

---

[16]August's pending motions and objections are denied as moot.